UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

NICK CASTALDI,

                  Petitioner,

       - against -

THOMAS POOLE, Superintendent, Five Points
Correctional Facility,

                  Respondent.

-----------------------------------------------------------X

**MEMORANDUM & ORDER**
07-CV-1420 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Petitioner *pro se* Nick Castaldi brings this petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, challenging his September 11, 2000, conviction for rape and criminal sexual

conduct in New York State Supreme Court, Suffolk County. (Pet. (Doc. No. 1-1) at 1.) For the

reasons that follow, the petition for a writ of habeas corpus is DENIED.

## PROCEDURAL HISTORY

Petitioner was convicted of rape and criminal sexual conduct for drugging, raping, and

sodomizing a victim at his residence. (*Id*.) Petitioner videotaped this conduct. The crimes came

to light after videos were viewed by petitioner's girlfriend, Sharon Tayler, who had been asked

by petitioner to retrieve and preserve the videos while petitioner was incarcerated on unrelated

charges. (*Id*. at 10.) To petitioner's dismay, Tayler informed the police of the existence and

content of the videos. Petitioner was subsequently arrested and tried for rape in the first degree

and criminal sexual conduct in the first degree pursuant to N.Y. Penal L. §§ 130.35(2) and

130.50(2). He was convicted on September 11, 2000.

On October 10, 2000, petitioner was sentenced to consecutive prison terms of twelve-

and-one-half to twenty-five years for each count. (*Id*.) The trial court denied petitioner's motion

to vacate his conviction pursuant to N.Y. Crim. P. L. § 440.10 on April 8, 2005. (Pet., Ex. A (Doc. No. 1-3).) The Appellate Division affirmed petitioner's conviction and sentence on December 12, 2005.[1] *People v. Castaldi*, 806 N.Y.S.2d 684 (N.Y. App. Div. 2005). The New York Court of Appeals denied leave to appeal on February 24, 2006. *People v. Castaldi*, 845 N.E.2d 1281 (N.Y. 2006).

On April 18, 2006, the Appellate Division denied petitioner's motion for a writ of error *coram nobis* seeking to vacate its decision affirming his conviction and sentence. *People v. Castaldi*, 812 N.Y.S.2d 375 (N.Y. App. Div. 2007). The Court of Appeals denied leave to appeal on September 15, 2006. *People v. Castaldi*, 857 N.E.2d 71 (N.Y. 2006). On October 2, 2007, the Appellate Division denied petitioner's motion for a writ of error *coram nobis* seeking to vacate his sentence and conviction on the ground of ineffective assistance of appellate counsel. *People v. Castaldi*, 841 N.Y.S.2d 897 (N.Y. App. Div. 2007).

Petitioner timely filed this petition for habeas corpus in this Court; the District Attorney of Kings County filed a response on behalf of respondent (Doc. No. 13); and petitioner filed a reply. (Doc. No. 20.)

### STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), federal courts may grant a petition for habeas corpus to a state prisoner on a claim "adjudicated on the merits" in state court only where the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] In reaching its decision, the Appellate Division considered a *pro se* supplemental brief submitted by petitioner. Petitioner had also sought to submit a *pro se* supplemental reply brief, but the Appellate Division declined to grant permission. (*See* Pet'r's Aff. in Supp. of Pet. (Doc. No. 1-2) at 5-6, 90-92; Resp't's Mem. of Law (Doc. No. 13) at 30-31.)

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Conversely, claims that have not been adjudicated on the merits are subject to *de novo* review. *Washington v. Schriver,* 255 F.3d 45, 55 (2d Cir. 2001). A state court's factual findings are presumed to be correct and may be overturned only if a petitioner offers "clear and convincing evidence" that the findings were in error. 28 U.S.C. § 2254(e)(1).

A state court adjudicates a petitioner's federal constitutional claims "on the merits" when "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001). The "state court need not mention the argument raised or cite relevant case law in order for its ruling to constitute an 'adjudication on the merits.'" *Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir. 2002) (citing *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001)). Thus, a state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits of that claim. *See Jimenez v. Walker,* 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Services*, 235 F.3d 804, 810-11 (2d Cir. 2000)). "[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311-12. "Stated simply," under § 2254(d)(1) this Court is confined to the question of "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (O'Connor, J.).

Additionally, a federal court may review a petition for a writ of habeas corpus only to the extent that a petitioner has "exhausted the remedies available in the courts of the State." 28

U.S.C. § 2254(b)(1)(A); *see also Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir. 1994).

Exhaustion "mandates a habeas petitioner to have 'fairly presented' in state court the claims that

are raised in the habeas petition." *Bohan v. Kuhlmann*, 234 F.Supp.2d 231, 243 (S.D.N.Y.

2002), *aff'd*, 66 F. App'x 277 (2d Cir. 2003), *cert. denied*, 540 U.S. 1213 (2004) (quoting *Picard

v. Connor,* 404 U.S. 270, 275 (1971)). This means that each legal and factual allegation

underlying a claim must first have been fairly presented to a state court. *See Rodriguez v. Hoke*,

928 F.2d 534, 538 (2d Cir. 1991).

Finally, the Court is mindful of its obligation to "construe a *pro se* complaint liberally."

*Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citations omitted). In other words, the Court

holds *pro se* pleadings to a less exacting standard than those drafted by attorneys. *See Haines v.

Kerner*, 404 U.S. 519, 520-21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008).

Since *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads

*pro se* pleadings to "raise the strongest arguments that they suggest." *Green v. United States*,

260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted). However, the Court "need not argue

a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New

York,* 956 F.Supp. 257, 259 (E.D.N.Y. 1995).

## DISCUSSION

Petitioner raises fourteen separate claims that he alleges cause his continued incarceration

to violate the U.S. Constitution. (*See* Pet'r's Aff. in Supp. of Pet. ("Petitioner's Affidavit") (Doc.

No. 1-2) at 7-8.) Respondent urges that all of these arguments are unpreserved, unexhausted, or

otherwise meritless. Petitioner "maintains that all issues brought were properly preserved." (*Id.*

at 97.) Generally, federal habeas review is not available for a federal claim if the state courts'

decision rested on a state law ground independent of the federal issue that is adequate to support

the state court's decision.  *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Fox Film Corp. v. Muller,* 296 U.S. 207, 210 (1935).  "[I]n the habeas context," however, "a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter."  *Trest v. Cain,* 522 U.S. 87, 89 (1997); *see also Zarvela v. Artuz,* 364 F.3d 415, 417 (2d Cir. 2004).  Moreover, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2); *Rhines v. Weber,* 544 U.S. 269, 277 (2005) (observing that a "district court would abuse its discretion if it were to grant [a petitioner] a stay when his unexhausted claims are plainly meritless").  Because the Court finds that all of petitioner's claimed grounds for relief lack merit, it need not consider whether each individual claim is unexhausted or procedurally barred.  *Accord Zarvela,* 364 F.3d at 417; *Lopez v. Lee,* No. 11-CV-2706 (JG), 2011 WL 6068119, at *11 (E.D.N.Y. Dec. 7, 2011).  The Court considers each argument in turn below.

I.     **"Largely Unpreserved"**

First, petitioner claims that the Appellate Division's decision affirming his conviction and sentence is too ambiguous to survive review by a federal habeas court.  At issue is the Appellate Division's holding that the contentions contained in petitioner's *pro se* supplemental brief to that court were "largely unpreserved for appellate review and, in any event, are without merit or do not warrant reversal."  *Castaldi,* 806 N.Y.S.2d at 684 (internal citation omitted).  Petitioner insists that "it is imperative that the [A]ppellate [D]ivision, on it's [*sic*] face, reflect what has been preserved, and what has not," and urges that the statement "[l]argely [u]npreserved" could "leave [petitioner] without recourse in the Federal Courts" with respect to the claims he raises in

his petition.[2] (Pet'r's Aff. at 97.) The Court construes this as an argument that the Appellate Division's decision is too unclear to establish which claims were subject to a procedural bar and which were adjudicated on the merits.

As noted above, because the Court finds that the petitioner's claims are meritless it need not consider the whether each individual claim is procedurally barred.[3] The Court does consider, however, whether the claims were adjudicated on the merits. Recently, in *Johnson v. Williams*, 568 U.S. ___ (2013) (slip op.), the Supreme Court provided additional guidance on this question. The Court clarified that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." *Id.*, slip op. at 10. Implicit in this holding is a rejection of the specificity requirement that petitioner urges.[4] "While it is preferable for an appellate court in a criminal case to list all of the arguments that the court recognizes as having been properly presented, federal courts have no authority to impose mandatory opinion-writing standards on state courts." *Id.* at 9. Accordingly, the Court concludes that "largely unpreserved" – especially read in the proper context here – adequately demonstrates that the state courts considered the issues

---

[2] The actual relief sought by petitioner is that "the Appellate division decision [be] changed to reflect which issues were preserved." (Pet'r's Aff. at 97.) That, of course, is beyond the power of this Court. Under AEDPA, a federal court is tasked with "determining the reasonableness of the state courts' 'decision' . . . not grading their papers." *Cruz v. Miller*, 255 F.3d 77 (2d Cir. 2001).

[3] The Court also notes that petitioner's concerns about an ambiguous procedural bar are overblown in light of the decisions of other courts in this circuit on this issue. *See, e.g., Hirsch v. Plescia*, No. 03-CV-1617 (DLI), 2005 WL 2038587, at *4 (E.D.N.Y. Aug. 23, 2005) (finding no procedural bar where the Appellate Division labeled prosecutorial misconduct claims "largely unpreserved"); *Garcia v. Greiner*, No. 01-CV-2470 (JG), 2004 WL 943902, at *3 n.2 (E.D.N.Y. Apr. 28, 2004) (finding that the phrase "largely unpreserved" did not mean "completely" unpreserved and therefore did not bar habeas review); *McCaskell v. Keane*, No. 97-CV-2999 (RPP) (GWG), 2001 WL 840331, at *14 (S.D.N.Y. July 26, 2001) (concluding that the use of "largely unpreserved" by the Appellate Division was "equivocal" and, thus, did not present an adequate and independent state ground that would bar habeas review).

[4] Petitioner has not made any showing that would rebut the presumption of adjudication on the merits, *i.e.*, "evidence [that] leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court." *Johnson*, 568 U.S. ___, slip op. at 13.

petitioner raised and adjudicated his claims on the merits.  The Court is therefore bound under AEDPA to show appropriate deference to the state courts' decisions.

## II.     Statute of Limitations

Petitioner next argues that his prosecution was commenced after the applicable statute of limitations had run.  Even if petitioner preserved and exhausted this claim, it is not a basis for relief.  A claim that a prosecution was outside the applicable statute of limitations is a matter of state rather than federal law.  *Cf. Harrison v. Walsh*, No. 06-CV-13328 (RMB) (AJP), 2007 WL 1576265, \*21 n.31 (S.D.N.Y. June 1, 2007), *rep. and recomm. adopted*, 2007 WL 2844867 (S.D.N.Y. Sept. 27, 2007).  Moreover, the claim itself is meritless.  Under New York law, the statute of limitations for prosecution of a B felony is five years.  *See* N.Y. Crim. Proc. Law § 30.10(2)(b).  The record contains sufficient evidence to support the inference that petitioner's prosecution was commenced within that period.[5]

## III.    Venue

Next, petitioner argues that the prosecution failed to prove that his crime was committed in Suffolk County and that the trial judge erred by refusing to instruct the jury as to venue. Petitioner correctly points that the New York State constitution provides that a defendant has a right to be tried in the county where the crime was committed unless otherwise provided by law. *See People v. Greenberg*, 678 N.E.2d 878 (N.Y. 1997).  At trial the prosecution bears the burden of proving proper venue by a preponderance of the evidence.  *Id.*  Additionally, where a defendant requests a charge to the jury regarding venue, "it is improper for the trial court to

---

[5] Nor was the prosecutor required to establish the timeliness of the prosecution as an element of the crime.  *People v. Dickson*, 519 N.Y.S.2d 419 (N.Y. App. Div. 1987) ("[T]he Statute of Limitations defense is not a nonwaivable constitutional or jurisdictional right, for unless the defense is asserted the People are not put to their burden of demonstrating that the action is timely.").

refuse to submit the factual issue to the jury – even if the defendant does not contradict the People's proof with respect to venue." *Id.*

Federal habeas review, however, is available only for rights guaranteed by the federal Constitution. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."). Respondent dismisses this claim as failing to "present a federally cognizable claim." (Resp't's Mem. of Law (Doc. No. 13) at 21.) Respondent is correct that the deprivation of a right guaranteed by the New York state constitution – without more – is not a basis for granting federal habeas relief. To the extent petitioner seeks relief predicated on his rights under the state constitution, his claim fails.

Petitioner also argues, however, that the U.S. Constitution requires analogous proof that he was tried in the county in which the crime was committed. Specifically, petitioner argues that "[t]he Constitution twice safeguards the [petitioner]'s venue rights," pointing to Article III and the Sixth Amendment.[6] (*See* Pet'r's Aff. at 47-48.) The applicability of these constitutional provisions to the state prosecution of petitioner is doubtful. Article III explicitly imposes limitations only on the federal government. *See* U.S. CONST. art. III, § 2, cl. 1, 3 (referencing "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made" and providing that a "Trial shall be at such Place or Places as the Congress may by Law have directed"). Similarly, the Second Circuit has recognized that "considerable doubt exists as to whether state venue issues raise a Sixth Amendment claim." *Bossett v. Walker*, 41

---

[6] Article III provides that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed . . . ." U.S. CONST. art. III, § 2, cl. 3. Similarly, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." *Id.*, amend. VI.

F.3d 825, 830 (2d Cir. 1994). Three other circuits have held that the Sixth Amendment's vicinage clause does not apply to the states. *See Caudill v. Scott*, 857 F.2d 344, 345 (6th Cir. 1988); *Cook v. Morrill*, 783 F.2d 593, 595 (5th Cir. 1986); *Zicarelli v. Dietz*, 633 F.2d 312, 321-26 (3d Cir. 1980). This Court cannot conclude that these provisions impose federal venue constraints on state prosecutions as a matter of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

IV. **Evidentiary Issues**

Petitioner also advances several arguments regarding the evidence introduced at his trial. Specifically, petitioner argues that habeas should be granted because (1) the video that showed his commission of the acts charged should have been suppressed; (2) the trial judge improperly admitted evidence of uncharged crimes; (3) the trial judge admitted improper character evidence; and (4) the prosecution impermissibly bolstered the testimony of one of its witnesses.

A. **Suppression of Video Tapes**

Petitioner first argues that the video of his crimes retrieved from Sharon Tayler was obtained in violation of his rights under the Fourth Amendment. Specifically, petitioner maintains that the video should have been suppressed because the seizure and subsequent viewing of the tape was illegal. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). Here, the trial court held a hearing on the admissibility of the videos proffered by the prosecution pursuant to *People v. Molineux*, 61 N.E. 286, 287 (N.Y. 1901). (*See* Tr. of Hr'g held August 20, 2000.) Petitioner was

provided with a full and fair opportunity to litigate his Fourth Amendment claim at this hearing. As such, the alleged deprivation that petitioner now claims is not a basis on which to grant relief.

Petitioner also urges, however, that his trial counsel was ineffective for failing to seek suppression of the videos on Fourth Amendment grounds. A federal habeas court is not precluded from considering a Sixth Amendment right to counsel claim that rests on trial counsel's failure competently to litigate a Fourth Amendment claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To the extent that petitioner raises such a claim, however, it must fail. It is far from clear that petitioner's theory of suppression would have been successful and trial counsel was under no obligation to pursue a fruitless theory.[7] *United States v. Arena,* 180 F.3d 380, 396 (2d Cir. 1999), *cert. denied*, 531 U.S. 811, 121 (2000) (noting that "[f]ailure to make a meritless argument does not amount to ineffective assistance"). Moreover, petitioner's counsel was successful in excluding other videos the prosecution sought to offer. "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 689 (1984)). Since petitioner is unable to show that trial

---

[7] Petitioner's argument is that his request that Tayler retrieve and hold the videos created a bailment contract that gave rise to a reasonable expectation of privacy. "[I]n the Fourth Amendment context, bailees can have a sufficient interest in bailed property to give them standing to object to its seizure or search." *United States v. Perea*, 986 F.2d 633, 640 (2d Cir. 1993). Because Tayler agreed to store the videos for petitioner, "it is arguable that at least for some length of time, [petitioner] had an expectation of privacy in the goods that society might consider reasonable whether or not payment was involved." *United States v. Miller*, 148 F.3d 207, 214 (2d Cir. 1998), *cert. denied*, 525 U.S. 1072 (1999). Ordinarily, "[a] bailee has the right – and often the duty – to exclude others from possession of the property entrusted to him." *Perea*, 986 F.2d at 640 (citing *Voorhis v. Consolidated Rail Corp.*, 458 N.E.2d 823, 823 (N.Y. 1983), and noting that even a gratuitous bailee must exercise some duty of care with respect to the bailor's property). In *Perea*, however, the court emphasized that the reasonable expectation of privacy at issue was that of the *bailee* – not the bailor. *Perea*, 986 F.2d at 641; *cf. United States v. Eldridge*, No. 09-CR-329A, 2012 WL 2131890, at *1 (W.D.N.Y. June 12, 2012) ("*Perea* does not discuss the Fourth Amendment rights of bailors."); *United States v. Miller*, No. 96-CV-0412 (BSJ), 1997 WL 109565, at *2 n.2 (S.D.N.Y. Mar. 12, 1997) ("Even assuming that the defendant had a bailment relationship [. . .] *Perea* stands only for the proposition that bailees – not bailors, as the defendant here would be – can have sufficient interest in bailed property to give them standing to make a Fourth Amendment challenge."). The rights of a bailor are unclear. *See Eldridge*, 2012 WL 2131890, at *3 ("It appears that the Second Circuit has not directly addressed the Fourth Amendment rights of an individual who has left personal property in storage with another while incarcerated.").

counsel's representation was deficient for failing to seek suppression of the videos on Fourth Amendment grounds, petitioner fails to state a valid claim for ineffective assistance of counsel.

**B. Evidence of Additional Criminal Acts**

Petitioner next argues that the video introduced at trial contained evidence of crimes other than those alleged in the indictment and that the court improperly admitted testimony that the defendant drugged and raped women on other occasions. Where a defendant claims that his conviction was for a crime or crimes other than those in an indictment, the Second Circuit distinguishes between a "constructive amendment" of the indictment and a "variance." *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001). A constructive amendment occurs "when the terms of the indictment were effectively modified by the presentation of evidence or by actions of the court so that 'there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *Id.* (quoting *United States v. Delano,* 55 F.3d 720, 729 (2d Cir. 1995)). A variance, on the other hand, occurs "when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.* (quoting *United States v. Frank,* 156 F.3d 332, 338 n.5 (2d Cir. 1998)).

Petitioner does not argue that the evidence offered at his trial proved facts materially different from those alleged in the indictment; rather, he asserts that the evidence risked a conviction for any of the criminal sex acts shown on the video even though only one count was alleged in the indictment. *Cf. Afrika v. Conway*, No. 06-CV-0280T, 2011 WL 582618, at *14-15 (W.D.N.Y. Feb. 9, 2011). Petitioner's argument appears to be that, because of this constructive amendment, "there is a substantial likelihood that [he] may have been convicted of an offense other than that charged in the indictment." *Delano,* 55 F.3d at 729 (quoting *United States v.*

*Mollica,* 849 F.2d 723, 729 (2d Cir. 1988)) (internal quotation marks omitted). While "[a] constructive amendment is a *per se* prejudicial violation of the Grand Jury Clause of the Constitution," *Thomas,* 274 F.3d at 670, the right to indictment by a grand jury is not applicable to the states.[8] *See Alexander v. Lousiana,* 405 U.S. 625, 633 (1972); *LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir. 2002). Thus, even assuming petitioner is correct that his conduct constituted separate sex offenses, he fails to identify a violation of a federal right that would justify granting his petition.

Petitioner also argues that "[Robert] Wolf improperly testified that the defendant drugged women, raped them, and video taped [*sic*] the incidents."[9] (Pet'r's Aff. at 44.) The thrust of this argument is that Wolf's testimony unfairly implied a pattern of criminal sexual conduct with multiple victims. Habeas relief is not warranted by an erroneous application of state evidence law. *See Estelle,* 502 U.S. at 72; *Sims v. Stinson,* 101 F.Supp.2d 187, 194 (S.D.N.Y. 2000), *aff'd,* 8 F. App'x 14 (2d Cir. 2001). As such, "the mere admission of prior bad acts by the trial court, even if offered for propensity purposes, is not, without more, sufficient to establish a constitutional violation that demands issuance of the writ." *Schicchi v. Ercole,* 2007 WL 837109, at *7 (E.D.N.Y. March 18, 2007); *see also Perez v. Miller,* No. 05-CV-5575 (NG), 2009 WL 1044629, at *11-12 (E.D.N.Y. Apr. 20, 2009) (finding that the improper admission of a prior drug conviction was not grounds for habeas relief). Even if the trial court improperly applied

---

[8] A variance may be considered on federal habeas review as it implicates the Double Jeopardy and Due Process Clauses of the Constitution – provisions that have been incorporated against the States. *See Afrika,* 2011 WL 582618, at *14; *U.S. ex rel. Richards v. Bartlett,* No. 92-CV-2448, 1993 WL 372267, at *4 (E.D.N.Y. Sept. 9, 1993). Petitioner does not allege, however, that he suffered repeated prosecution for the same offense, was uninformed of the charges against him, or surprised by the evidence offered at trial. *Bartlett,* 1993 WL 372267, at *4.

[9] Petitioner presents this argument as a claim that the prosecution introduced false evidence. As petitioner concedes that Wolf's testimony was corroborated by the video introduced at trial (*see* Pet'r's Aff. at 44), such an argument has no merit. Construing the petition to raise the strongest arguments it suggests, the Court considers this claim as alleging the improper introduction of character evidence. *See* FED. R. EVID. 404; *People v. Molineux,* 61 N.E. 286, 287 (N.Y. 1901).

state evidentiary rules in this instance, the introduction of the evidence did not amount to a violation of due process because the evidence was not "so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)).

### C. Bolstering Witness Testimony

Next, petitioner argues that he was deprived of a fair trial because the trial court improperly permitted "[i]nferential [b]olstering" of Tayler's testimony through hearsay, thereby violating his rights under the Due Process Clause.[10]  (Pet'r's Aff. at 51-53.)  Petitioner urges that the prosecution improperly "bolstered" the Tayler's testimony by allowing a police officer to testify to an identification made by Tayler.  (*See* Pet'r's Aff. at 50-53.)  In essence, petitioner urges that relief is warranted because "reversible error occurs where a police officer bolsters the testimony of an identifying witness by testifying that he or she saw the witness make the identification."  *Connolly v. Artuz*, No. 93-CV-4470 (FB), 1995 WL 561343, at *7 (E.D.N.Y. Sept. 15, 1995).  In *People v. Trowbridge,* 113 N.E.2d 841 (N.Y. 1953), the New York Court of Appeals held that such testimony was improper.  Petitioner also maintains that Tayler's testimony itself was inadmissible hearsay.

Again, however, this concerns matters of state law.  *See People v. Duncan*, 385 N.E.2d 572, 576 (N.Y. 1978), *cert. denied,* 442 U.S. 910 (1979).  Since habeas relief does not lie for errors of state law, "[e]rroneous evidentiary rulings rarely rise to the level" of a Due Process

---

[10] Petitioner argues that *Ryan v. Miller*, 303 F.3d 231 (2d Cir. 2002), is directly on point.  Petitioner is incorrect.  Although the focus in *Ryan* was on hearsay testimony, that case turned on a finding that the testimony in question constituted a violation of the Confrontation Clause.  *See* 303 F.3d at 247-48.  "[A]lthough all assertions that violate the Confrontation Clause will also be a form of hearsay, not all assertions that hearsay rules prohibit will run afoul of the Confrontation Clause."  *Id.* at 247.  Since Tayler testified at petitioner's trial, there is no Confrontation Clause issue in this case.  "[T]here is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."  *California v. Green*, 399 U.S. 149, 158 (1970).

violation. *Washington*, 255 F.3d at 56 (quoting *Agard v. Portuondo,* 117 F.3d 696, 705 (2d Cir.1997), *rev'd on other grounds,* 529 U.S. 61 (2000)). "At most, petitioner's claim is that the testimony violated a New York evidentiary rule or policy . . . that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification occurred." *Styles v. Zandt*, No. 94-CV-1863 (MGC), 1995 WL 326445, at *5 (S.D.N.Y. May 31, 1995), *aff'd sub nom. Styles v. Van Zandt*, 101 F.3d 684 (2d Cir. 1996). Other courts in this circuit have squarely held that "[t]he concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution . . . [and] [v]iolation of the *Trowbridge* rule, as is so with regard to many such state court rules, does not rise to a constitutional level." *Ayala v. Hernandez*, 712 F. Supp. 1069, 1074 (E.D.N.Y. 1989) (quoting *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y.1985)) (internal alterations omitted). Likewise, the erroneous admission of hearsay, in and of itself, is not enough to establish a constitutional violation. *Cf. Alvarez v. Scully*, 833 F. Supp. 1000, 1005 (S.D.N.Y. 1993) ("An erroneous evidentiary ruling could rise to the level of a constitutional claim cognizable on a habeas petition if it were shown that the error so infected the proceedings as to have rendered a petitioner's trial fundamentally unfair."). The Court must determine whether the erroneous admission was "material," *i.e.* whether it "deprive[d] the defendant of fundamental fairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988). Based on the facts in the record, the Court is not persuaded that these errors – if they were errors – rise to a constitutional level.

## V. Weight and Sufficiency of the Evidence

Petitioner also argues that his conviction for first-degree rape was against the weight of the evidence. An "argument that a verdict is against the weight of the evidence states a claim

under state law, which is not cognizable on habeas corpus." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1151 (2012); *Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001). Thus, the Court is bound by the decision of the Appellate Division in this regard. *See Castaldi*, 806 N.Y.S.2d at 685 ("Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence."). However, petitioner also cites *Jackson v. Virginia*, 443 U.S. 307 (1979), which concerns the legal *sufficiency* of evidence under federal due process principles. (*See* Pet'r's Aff. at 55.) In light of petitioner's *pro se* status, the Court reviews the sufficiency of the evidence underlying his conviction.

A challenge to the sufficiency of the evidence fails if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). State law determines the elements of the crime to be proven. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). In this case, the prosecution was required to prove that petitioner engaged in sexual intercourse with another person who was incapable of consent by reason of being physically helpless. *See* N.Y. Penal Law §§ 130.35.

Under New York law, "[s]exual intercourse requires 'penetration.'" *People v. McDaniel*, 611 N.E.2d 265, 271 (N.Y. 1993). The victim in this case was drugged and unconscious when petitioner committed the act in question – and therefore unable to testify as to the facts at the time of the rape. However, a victim's "inability to testify with respect to penetration is not . . . conclusive, if other evidence existed from which that fact could be established." *People v. Carroll*, 740 N.E.2d 1084, 1088 (N.Y. 2000). Although petitioner suggests that the video played

for the jury was insufficient evidence of penetration (*see* Pet'r's Aff. at 54-55), he offers no

sensible basis for this conclusion. Thus, the state courts reasonably concluded that a video

recording of the rape was sufficient evidence to convince a rational trier of fact of petitioner's

guilt beyond a reasonable doubt.

## VI.     Prosecutorial Misconduct

Petitioner next argues that the prosecutor at his trial improperly offered evidence the

prosecutor knew to be false. In particular, petitioner urges that the prosecutor was on notice that

the petitioner and victim had engaged in prior sexual acts following the pretrial hearing at which

another video, showing such acts, was excluded by the trial court. (Pet'r's Aff. at 42-43.)

Petitioner argues that the prosecution knowingly introduced or allowed testimony from the

victim stating that the victim had never had voluntary sexual intercourse with petitioner  and

maintains that the prosecutor had "an affirmative duty to correct . . . [the] testimony." (Pet'r's

Aff. at 43, 45.)

A prosecutor certainly has a duty of candor in court and an enduring obligation to pursue

the truth. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998). "[T]he knowing

use of perjured testimony involves prosecutorial misconduct and, more importantly, involves 'a

corruption of the truth-seeking function of the trial process.'" *United States v. Bagley*, 473 U.S.

667, 680 (1985) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). This includes

instances in which the "prosecution knew, or should have known, of the perjury." *Agurs*, 427

U.S. at 103 (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)).

Petitioner has failed to show that the prosecutor committed any misconduct. The proof

adduced by the prosecution during trial was completely consistent both with the People's theory

of the case and the evidence reviewed by the trial court at the suppression hearing. (*See* Tr. of

Hr'g held August 20, 2000, at 30-32.) "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Bagley,* 473 U.S. at 676). Petitioner has simply failed to show that the prosecutor's conduct in any way rendered his trial unfair.

## VII.    Cruel and Unusual Punishment

Next, petitioner argues that his sentence violates the Eighth Amendment because it constitutes cruel and unusual punishment. The Eighth Amendment "prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). That proscription, however, applies "most frequently in opinions dealing with the death penalty" and "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272. Petitioner's subjective belief that "the sentence imposed is far more than is necessary" is irrelevant. (Pet'r's Aff. at 61.) That determination is to be made, within constitutional bounds, by the elected representatives of the people of the State of New York. *See Rummel*, 445 U.S. at 271-74.

"[F]or crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." *Id.* at 274. Consequently, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Under New York law, a Class B felony is punishable by an indeterminate term of no more than twenty-five years. *See* N.Y. Penal Law § 70.00(2)(b) (McKinney 2012). Petitioner was convicted of two such felonies and sentenced to two consecutive terms of twelve-and-one-half to twenty-five years. This sentence

was within the range prescribed by state law.  Consequently, this claim does not present a federal issue for review.

## VIII.    Unconstitutional Process for Appointment of Counsel

Petitioner next urges that his right to counsel was violated by the state mechanism for providing counsel to indigent defendants.  Petitioner cites *New York County Lawyers' Ass'n v. State*, 745 N.Y.S.2d 376 (N.Y. Sup. Ct. 2002), *aff'd*, 759 N.Y.S.2d 653 (N.Y. App. Div. 2003), and urges that "[i]t can be inferred that if the symptoms outlined by the court in [*NYCLA*] . . . appl[y] in my case, then I have made a showing significant enough to establish that my constitutional rights were violated by the structure of the assigned counsel program."  (Pet'r's Aff. at 39.)  In *NYCLA*, Justice Suarez of the New York State Supreme Court issued a preliminary injunction against the City and State of New York that required a higher hourly rate for appointed counsel in New York County until the statutes governing compensation were modified by the state legislature.[11]  745 N.Y.S.2d at 389.   In doing so, the court opined that "New York's assigned counsel rates undermine both the operation of the courts and the quality of the representation provided to children and indigent adults."  *Id.* at 387.

Importantly, however, though the *NYCLA* court referenced *Gideon v. Wainwright*, 372 U.S. 335 (1963), Judge Suarez observed only that "New York's poor are too often not afforded the 'meaningful and effective' representation to which they are entitled *under New York Law and the New York State Constitution*."  *Id.* at 389 (internal citations omitted) (emphasis added).  In fact, the court expressly "decline[d] . . . to issue a declaratory judgment finding unconstitutional those portions of the statute which set the compensation rates, the distinction between the hourly rates paid for in and out-of-court work, and the ceilings on total per case compensation, without

---

[11] These provisions have since been amended.  *See* 2003 N.Y Sess. L. Ch. 62 (McKinney); 2010 N.Y. Sess. L. Ch. 41 (McKinney).  As such, any constitutional challenge to the actual compensation rates is not properly before this Court.

presiding over a trial." *Id.* Petitioner's reliance on this case as evidence of *per se* ineffectiveness is thus misplaced. While the Court recognizes the policy concerns underlying the decision in *NYCLA*, it will not presume ineffectiveness of counsel merely because counsel was appointed or participated in the assigned counsel program. *Cf. Campbell v. Poole*, No. 04-CV-6261(VEB), 2008 WL 2561998, at *2 (W.D.N.Y. June 26, 2008). The test for ineffective assistance of counsel remains that outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, petitioner's claim that he was denied the effective assistance of counsel on the ground that his trial counsel was appointed is without merit.

## IX.   Denial of Leave to File a Supplemental Reply Brief

Petitioner also argues that the Appellate Division should have allowed him to file a *pro se* supplemental reply brief. Under New York law, however, the Appellate Division was under no obligation to do so.[12] *See People v. White*, 539 N.E.2d 577, 583 (N.Y. 1989) ("Although it appears that some of the departments of the Appellate Division accept *pro se* briefs as a matter of course, as do we, apparently some do not. […] The decision . . . lies within the sound discretion of the court."). Even assuming the Appellate Division should have allowed petitioner to file a supplemental reply brief, procedural errors that occur during state post-conviction proceedings generally are not cognizable on federal habeas review. *See Guzman v. Couture*, No. 99-CV-11316 (RMB) (HBP), 2003 WL 165746, at *13 (S.D.N.Y. Jan. 22, 2003) (collecting cases).

---

[12] Much has been made by both parties of the procedure in N.Y. Comp. Codes R. & Regs. tit. 22, § 670.12(h) for filing a *pro se* supplemental brief. This regulation addresses *Anders v. State of California*, 386 U.S. 738 (1967), in which the Supreme Court held that "if [appellate] counsel finds [a] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744. Counsel must also, however, provide to an indigent petitioner a copy of "a brief referring to anything in the record that might arguably support the appeal" with enough "time allowed [the petitioner] to raise any points that he chooses . . . ." *Id.* New York has codified this procedure in § 670.12(h), providing that "[a] defendant . . . who wishes to file a *pro se* supplemental brief must make an application for permission to do so not later than 30 days after the date of mailing to the defendant of a copy of the brief prepared by counsel . . . briefly set[ting] forth the points that the appellant intends to raise in the supplemental brief." The rule does not, however, impose a duty on a state court to accept additional *pro se* filings beyond a supplement brief pursuant to *Anders*.

19

Reading the petition liberally, however, the Court construes petitioner's claim as asserting a Due Process violation, *i.e.* that the Appellate Division's rejection of petitioner's request to file a supplemental reply brief was so unfair as to deprive him of the due process of law. This argument, too, must be rejected.

As an initial matter, it is hardly clear that a petitioner has a right to file a supplemental reply brief. *See Stubbs v. Leonardo*, 973 F.2d 167, 169 (2d Cir. 1992), *adhered to on rearg. sub nom. People v. Stubbs*, 601 N.Y.S.2d 824 (N.Y. App. Div. 1993). The Appellate Division exercises considerable discretion in *pro se* cases. *Cf. Ciaprazi v. Senkowski*, No. 00-CV-5425 (JBW), 2003 WL 23199520, at *12 (E.D.N.Y. Dec. 5, 2003), *aff'd*, 151 F. App'x 62 (2d Cir. 2005). Conversely, there is no federal "constitutional right to self-representation on direct appeal from a criminal conviction" and "a lay appellant's rights to participate in appellate proceedings have long been limited" by appellate court rules. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 163-64 (2000). In reaching its decision, the Appellate Division considered the *pro se* supplemental brief submitted by petitioner but declined to permit the filing of another *pro se* submission. On these facts, the Court cannot conclude that prohibiting a petitioner from filing a supplemental reply brief violated due process. Accordingly, the Appellate Division's decision to deny petitioner leave to file a *pro se* reply brief in addition to his *pro se* supplemental brief did not violate petitioner's rights. *Cf. Whaul v. Griffin*, No. 10-CV-2772 (NGG), 2012 WL 4328372, at *11-12 (E.D.N.Y. Sept. 20, 2012); *Farr v. Greiner*, No. 01-CR-6921 (NG) (MDG), 2007 WL 1094160, at *39 (E.D.N.Y. Apr. 10, 2007).

## X.     Ineffective Assistance of Counsel

Petitioner also claims that he properly raised the issue of ineffective assistance of counsel in state court and that he was deprived of his constitutional right to the effective assistance of both trial and appellate counsel.

## A. Denial of § 440.10 Motion

First, petitioner argues that the trial court was required to entertain his motion pursuant to N.Y. Crim. P. L. § 440.10 alleging ineffective assistance of counsel. This motion denied because the proper manner in which to raise a record issue under New York law was by direct appeal. (*See* Pet., Ex. A.) Petitioner argues he motion should have been considered because (1) "issues relating to ineffective assistance of counsel should be exempt from mandatory procedural bars," (2) "the trial court is best suited to develop the facts necessary for determining adequacy of representation," and (3) "the only way to fairly, fully, and completely evaluate counsel's conduct is by way of a CPL 440.10 motion."[13] (*See* Pet'r's Aff. at 88-89.) As explained above, the operation of state procedural mechanisms does not raise an issue for review by this Court absent a violation of a federal constitutional right. *See Guzman*, 2003 WL 165746, at *13. Again construing the petition liberally, the Court interprets petitioner's claim as suggesting yet another due process violation.

Petitioner offers no persuasive grounds, however, on which to base such a claim. Petitioner's conclusory statements provide no support for his assertion that a motion pursuant to N.Y. Crim. P. L. § 440.10 is a superior form of review compared to a direct appeal, nor does he explain why errors or omissions by counsel cannot be gleaned from the record of a trial. Additionally, federal law already addresses petitioner's concerns by permitting a bona fide

---

[13] To support his claim, petitioner cites *Massaro v. United States*, 538 U.S. 500 (2003), and argues that "a direct appeal is inherently improper for raising ineffectiveness issues." (Pet'r's Aff. at 89.) *Massaro*, however, dealt with habeas petitions brought pursuant to § 2255, not § 2254. *See* 538 U.S. at 504. Moreover, "*Massaro* is not a constitutional decision, and by its own language it did not extend its rule beyond § 2255." *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003).

showing of ineffectiveness to satisfy the "cause" and "prejudice" prongs necessary to overcome a procedural bar. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). This Court is neither empowered nor inclined to attempt further refinements by tinkering with New York's state post-conviction procedures.

### B. Ineffective Assistance of Trial Counsel

Substantively, petitioner claims that his representation at trial deprived him of his constitutional right to the effective assistance of counsel under the Sixth Amendment. *See Strickland,* 466 U.S. at 668; *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963). "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970) (citations omitted). In particular, petitioner asserts that his counsel was ineffective because counsel failed to (1) suppress the videotapes seized by the police; (2) properly authenticate the video at trial; and (3) hire an expert to examine the video for tampering.[14]  (*See* Pet. (Doc. No. 1) at 34-35.)

Whether petitioner was deprived of the effective assistance of counsel is a mixed question of law and fact governed by the familiar analysis set forth in *Strickland*. In order to prove that his trial counsel was ineffective, petitioner must show that (1) counsel's performance at trial "fell below an objective standard of reasonableness" and (2) the deficient performance caused him substantial prejudice. 466 U.S. at 688, 691. An attorney is presumed to have acted reasonably and where "counsel is prepared and familiar with the relevant facts and legal

---

[14] Petitioner also argued that his trial counsel failed to "protect and/or preserve the record for appellate review, resulting in meritorious issues not being preserved." (Pet'r's Aff. at 35.) Other than the alleged errors identified above, however, petitioner failed to indicate any other errors his trial counsel ought reasonably to have preserved.

principles," a claim of ineffectiveness will usually fail. *United States v. DiPaolo,* 804 F.2d 225, 234 (2d Cir. 1986). In this case, even if the Court were to find that petitioner "meets both prongs of the *Strickland* test, his habeas petition can only be granted if the state courts' decision that he did not receive ineffective assistance of counsel represents an 'unreasonable,' not simply incorrect or erroneous, application of federal law." *Cox v. Donnelly*, 387 F.3d 193, 200 (2d Cir. 2004) (citing *Williams,* 529 U.S. at 412).

The facts of this case do not establish ineffective assistance of trial counsel. Petitioner's trial counsel was prepared and knowledgeable, effectively participated in pre-trial evidentiary hearings, and performed ably during trial. Moreover, as indicated above, petitioner's claimed constitutional violations are meritless and counsel cannot be faulted for failing to make losing arguments. *See Arena,* 180 F.3d at 396. In short, petitioner was provided with competent representation that fell squarely within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689-90.

### C. Ineffective Assistance of Appellate Counsel

Finally, petitioner also maintains that he was deprived the effective assistance of appellate counsel. A claim that appellate counsel was ineffective is also judged under the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 263 (2000). Petitioner contends that his appellate counsel was ineffective for failing to (1) move for reargument after petitioner's direct appeal was denied; (2) adequately review the facts and the record; (3) sufficiently research the applicable law; (4) compose a compelling brief; (5) offer to file an application for leave to appeal to the New York Court of Appeals; and (6) "expand" the record.[15] (*See* Pet. (Doc. No. 1) at 68-86.)

---

[15] Although petitioner raises many other arguments under different headings in this section of his petition, the majority are devoted to reiterating or rehashing the merits of other claims already addressed previously.

First, petitioner's claims regarding appellate counsel's alleged failures to review the facts, examine the record, research the law, compose a compelling brief, and expand the record are grounded purely in petitioner's disagreement with the facts proven at trial and offered on appeal. Differing characterizations and assertions of contrary fact, however, are not enough to sustain a claim of ineffective assistance of appellate counsel.[16] To establish ineffective assistance of appellate counsel, petitioner must "show[] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Petitioner does not have a "constitutional right to have appellate counsel raise every nonfrivolous issue that [he] requests," *Jones v. Barnes*, 463 U.S. 745, 754 n.7 (1983), nor does petitioner have a constitutional right to require counsel to adopt his subjective version of the facts.

Additionally, petitioner offers no authority for the proposition that appellate counsel was required to file his application for leave to appeal to the New York Court of Appeals.[17] On the contrary, New York regulations expressly permits the actions taken by petitioner's appellate counsel. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 670.12(g)-(h). Given the wide deference accorded to appellate counsel, the Court cannot conclude that the state courts' rejection of this claim was unreasonable.

## CONCLUSION

For the forgoing reasons, the petition for a writ of habeas corpus is DENIED. As Petitioner has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253; *Soto v. United States,* 185

---

[16] Petitioner's arguments also fall far below the showing required before this Court will overturn a state court's factual findings. *See* 28 U.S.C. § 2254(e)(1).

[17] Petitioner cites N.Y. Comp. Codes R. & Regs. tit. 22, § 670.4(a)(1) & (2) as imposing this duty. (*See* Pet'r's Aff. at 83.) That provision, however, refers only to scheduling orders and the active management of causes.

F.3d 48, 51 (2d Cir. 1999).  Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be undertaken in good faith.  *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to dismiss the petition, enter judgment accordingly, and to close this case.

The Clerk of Court is further directed to transmit a copy of this Order to plaintiff *pro se* via U.S. Mail.


SO ORDERED.


Dated: Brooklyn, New York
       February 28, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge